# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DAVID C.,                 )

               )

      Plaintiff,         )     No. 20-cv-3891

               )

          v.         )     Magistrate Judge Susan E. Cox

               )

KILILO KIJAKAZI, Acting Commissioner  )

of the Social Security Administration,  )

               )

      Defendant.        )

## MEMORANDUM OPINION AND ORDER

Plaintiff David C.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits. The parties have filed cross motions for summary judgment.[2] As detailed below, Plaintiff's motion for summary judgment (dkt. 16) is DENIED and Defendant's motion for summary judgment (dkt. 21) is GRANTED. The final decision of the Commissioner is affirmed.

## 1. SOCIAL SECURITY REGULATIONS AND STANDARD OF REVIEW

ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment (or combination of impairments) meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 404.1523; 20 C.F.R. § 404.1545; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled.

---

[1]    In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name(s).

[2]    "Plaintiff's Brief in Support of his Motion to Reverse the Decision of the Commissioner of Social Security" has been construed as a motion for summary judgment by the Court.

20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id.* At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities she is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show that there are jobs that the claimant is able to perform, in which case a finding of not disabled is due. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

The Court's scope of review here is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation and signals omitted). The Court reviews the ALJ's decision directly, but plays an "extremely limited" role in that the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute (its) own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citation omitted).

## 2. RELEVANT BACKGROUND

Plaintiff was a human resources manager for approximately 25 years before he was laid off

on December 31, 2016 because his job was eliminated. (R. 16, 164, 174.) On his Adult Disability Report, Plaintiff highlighted this fact and noted "[d]uring this stage of my career doing the same work for more than the last 25 years, I do not feel that it would be possible for me to retrain or hold another job. (R. 174.) Subsequent to the elimination of his HR position, Plaintiff has been working part time for a company who contracts him out as a companion, a semi-skilled job involving responsibility for the well-being of another individual. (R. 16, 33-35, 50.)

On June 19, 2017, Plaintiff protectively filed for a period of disability and disability insurance benefits. (Administrative Record ("R.") 38.) Plaintiff alleged disability beginning December 31, 2016. *Id.* Plaintiff's applications were denied initially and upon reconsideration. *Id.* Plaintiff appealed those denials and appeared at a March 19, 2019 Administrative Hearing before Administrative Law Judge ("ALJ") Janice M. Bruning. (R. 29-56.) On May 31, 2019, ALJ Bruning issued an unfavorable decision, concluding that Plaintiff had not established he was disabled during the period from his onset date through the date of the ALJ's decision. (R. 13-21.) Plaintiff requested Appeals Council review, which was denied on January 3, 2020. (R. 1-3.) Thus, the Decision of the Appeals Council is the final decision of the Commissioner. 20 C.F.R. §404.981. Plaintiff, through counsel, filed the instant action on July 2, 2020, seeking review of the Commissioner's decision. (Dkt. 1.)

**3.      THE ALJ'S DECISION**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of December 31, 2016. (R. 15.) The ALJ acknowledged Plaintiff's part-time work as a companion, and found no indication that this work rose to the level of substantial gainful activity. *Id.* At Step 2, the ALJ found that Plaintiff had the severe impairments of myotonic dystrophy; spinal disorder; and obesity. *Id.* The ALJ determined that Plaintiff's gastroesophageal reflux disease; obstructive sleep apnea; diabetes mellitus; and hypertension and cholesterol disorder were non-severe impairments. (R. 15-16.) The ALJ also "considered whether anxiety is a severe impairment" but

3

ultimately did not find it severe. (R. 16.) At Step 3, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. (R. 17-18.) Before Step 4, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of light work. (R. 18.) However, Plaintiff could lift and/or carry ten pounds occasionally and less than ten pounds frequently; should not climb ladders, ropes, or scaffolding; no more than occasionally climb ramps and stairs, balance, stoop, crouch, kneel, crawl, bend, or twist; use his hands no more than frequently to handle, finger, and feel; avoid concentrated exposure to cold temperatures; and be allowed to wear compression stockings. *Id*. At Step 4, the ALJ found Plaintiff capable of performing his past relevant work as a human resources manager and human resources generalist. (R. 21.) Therefore, the ALJ did not need to reach Step 5. Because of these determinations, the ALJ found Plaintiff not disabled under the Act. *Id*.

**4.      DISCUSSION**

Plaintiff raises three issues with the ALJ's opinion: (1) that the ALJ erred in evaluating select medical opinions; (2) that the ALJ inappropriately assessed Plaintiff's subjective statements; and (3) that the ALJ erred in assessing Plaintiff's RFC.

**4.1      The ALJ Adequately Assessed the Medical Opinions**

As an initial matter, the Court briefly acknowledges the assessment of medical opinions has recently changed in Social Security cases. For claims filed after March 27, 2017, the old "treating physician rule"[3] has been replaced by 20 C.F.R. § 404.1520c.

The Social Security Agency recently explained that healthcare delivery has changed significantly since the adoption of the "treating physician rule" in 1991, and the source of a medical opinion is no longer the most important factor in determining an opinion's persuasiveness. 82 Fed.

---

[3]      20 C.F.R. § 404.1527.

Reg. 5853. Thus, treating physicians' opinions are no longer entitled to presumptive controlling weight: the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Now, the Commissioner does not "articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your record;" instead, the ALJ "will articulate how [the ALJ] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in" the regulation. 20 C.F.R. § 404.1520c(b)(1). Consistency and supportability "are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be," and, "[t]herefore we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." 20 C.F.R. § 404.1520c(b)(2). The ALJ may consider the other factors (*e.g.*, the treating relationship or the provider's specialty), but is not required to do so. *Id.* Regarding the consistency factor, the regulation states "[t]he more consistent a medical opinion…is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion…will be." 20 C.F.R. § 404.1520c(c)(2).

Plaintiff complains the ALJ failed to adequately assess the medical opinions of two physicians in this matter: those of pain specialist, Dr. Edward B. Yang, M.D., and state agency psychologist Ryan Mendoza, Ph.D. However, throughout his brief, Plaintiff relies on much outdated case law, which is inapplicable as it was adjudicated under the "treating physician rule" instead of the newer regulations emphasizing supportability and consistency. Unfortunately, Plaintiff provided little insight into the application of the new regulations to either to Dr. Yang's or Dr. Mendoza's opinions.

### 4.1(a)    The ALJ Reasonably Considered Dr. Yang's Opinions

On March 26, 2018, pain specialist Dr. Yang completed a Chronic Pain Residual Functional Capacity Questionnaire. (R. 836-38.) At that time, Dr. Yang had only seen Plaintiff on two occasions. (R. 20.) Dr. Yang identified Plaintiff's relevant diagnoses as cervical stenosis and degenerative disc disease, and stated that Plaintiff's prognosis was good. (R. 836.) The only objective signs Dr. Yang observed were reduced range of motion in the cervical spine, reduced grip strength, and reduced abdominal strength. *Id*. Nonetheless, he also said Plaintiff had pain in his neck, lower back, legs, and arms, and generalized weakness, and that Plaintiff's pain would frequently interfere with his attention and concentration. *Id*. Dr. Yang did not prescribe any medications to address any of Plaintiff's symptoms. (R. 837.) He opined Plaintiff could sit or stand for 20 minutes at a time; could occasionally lift up to 10 pounds; could occasionally twist and climb stairs; and could frequently stoop and crouch. (R. 837-38.) He opined Plaintiff had significant limitations in reaching, handling, or fingering, but did not identify the extent of those limitations, despite completing a form that asked for this specific information – instead, Dr. Yang noted Plaintiff's limitations in reaching, handling, or fingering were "not tested." (R. 838.) Finally, he opined Plaintiff would miss about three days of work per month. *Id*.

The ALJ found Dr. Yang's opinions unpersuasive. (R. 20.) She reasonably questioned Dr. Yang's assessment that Plaintiff's pain would frequently interfere with his attention and concentration (R. 836), because no attention or concentration deficit was observed by any medical professional.[4] *Id*. In fact, Plaintiff's mental status exams were generally normal. (R. 20, 464, 471, 483, 493, 510, 523, 577-8, 586-87 (Plaintiff complained of poor focus and concentration, but performed well on all tasks), 594, 619, 639, 708, 728, 757, 786, 802, 830 (normal except depressed mood), 931, 1152.)

---

[4]    Contrary to Plaintiff's assertions (*see* dkt. 23, pp. 1-2), the Court does not find the ALJ's reference here to multiple, specific exhibits to be a "terse explanation," particularly since the ALJ was citing to these records to show the absence of medical evidence within them that would support Plaintiff's claims.

Thus, Dr. Yang's opinion that Plaintiff had frequent problems with attention and concentration (regardless of the reference to "pain" in the title of the form Dr. Yang filled out) was inconsistent with the evidence 20 C.F.R. § 404.1520c(b)(2), (c)(2). The ALJ did not err in concluding that this inconsistency rendered Dr. Yang's opinion unpersuasive.

The ALJ was also concerned by the lack of support Dr. Yang provided for his opinions. (R. 20; 20 C.F.R. § 404.1520c(b)(2), (c)(1).) The ALJ correctly noted that despite opining "significant limitations in doing repetitive reaching, handling, or fingering," Dr. Yang failed to quantify or otherwise describe those limitations. (R. 20, 838.) This is because Dr. Yang never tested the extent of Plaintiff's abilities to reach, handle, or finger. (R. 838.) Dr. Yang's opinion on this topic was unsupported. 20 C.F.R. § 404.1520c(b)(2), (c)(1). Plaintiff asserts this lack of support should only effect the ALJ's consideration of Dr. Yang's reaching, handling, or fingering opinions. (Dkt. 16, p. 5.) As the Commissioner points out, that argument has two flaws which prevent the Court from finding error in the ALJ's conclusions. (Dkt. 22, p. 5.) First, Dr. Yang's willingness to opine on a limitation, without support or detail, may indeed reasonably reflect on the persuasiveness of all Dr. Yang's statements. Thus, the Court finds the ALJ did not err in concluding the lack of support also called into question Dr. Yang's other unexplained opinions (including the opinion Plaintiff would miss three days of work per month). Second, even if one could reasonably limit the lack of support to the reaching, handling, or fingering limitations Plaintiff desires, it is inappropriate for the Court to reweigh the evidence. *Gedatus*, 994 F.3d at 900. Thus, the ALJ's assessment as to the lack of support Dr. Yang provided for his opinions was reasonable and supported by the evidence.

Tangentially, Plaintiff implies the ALJ should have contacted Dr. Yang for an explanation of his opinion. (Dkt. 16, p. 5.) The Court notes that "[w]hen an ambiguity in the evidence must be resolved in order for the ALJ to determine whether the claimant is disabled, the ALJ has a duty to re-contact the medical source for clarification." *See Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir.

2004) (collecting cases). However, the ALJ, at his discretion, may refrain from re-contacting a medical expert when sufficient evidence exists to make a disability determination. *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004); *see also*, *Britt v. Berryhill*, 889 F.3d 422, 427 (7th Cir. 2018) ("to the extent Britt believes that the ALJ should have re-contacted Dr. Hildreth for an explanation regarding the inconsistencies between her report and those of other doctors, the ALJ was not required to do so because the record contained adequate information for the ALJ to render a decision"); *Frank B. v. Saul*, 2019 WL 6307651, at *8 (N.D. Ill. Nov. 25, 2019) (same). Because the record here contained adequate evidence on which to base her decision, the ALJ was not obligated to obtain any additional information from Dr. Yang.

Next, Plaintiff argues the ALJ failed to adequately assess whether Dr. Yang's opinions were supported and consistent with the evidence. But an ALJ is not required to discuss every piece of evidence. *See*, *e.g.*, *Gadatus*, 994 F.3d at 901; *Trottier v. Saul*, 809 F. App'x 326, 327 (7th Cir. 2020); *Pepper v. Colvin*, 712 F.3d 351, 363 (7th Cir. 2013) ("an ALJ is not required to discuss every snippet of information from the medical records that might be inconsistent with the rest of the objective medical evidence" (citing *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009)). The Court finds the ALJ was not required to explain whether certain results supported Dr. Yang's opinions, particularly when he did not identify those results as a basis for his opinions (*e.g.*, MRI results; myopathic processes; diminished hip flexor strength; hand tenderness; etc.). Moreover, Plaintiff has selectively chosen the evidence he wished the ALJ would have considered, but that select evidence is outweighed by other contradictory evidence (*e.g.*, a single record of diminished sensation is outweighed by numerous other observations of normal sensation – *compare* R. 579 *with* R. 377, 403, 719, 965, 1152; Plaintiff's subjective report of numbness is unsubstantiated by normal neurological examination results at the same visit – *compare* R. 930 *with* R. 931). Because the ALJ was not required to address every piece of evidence, she was not required to explain why these sporadic references to reported

8

symptoms did not render Dr. Yang's opinion persuasive; the ALJ's explanation for whether (and why) she found Dr. Yang's opinions supported and consistent with the evidence was adequate.

In sum, the Court finds the ALJ adequately addressed Dr. Yang's opinions; the Court will not overturn the ALJ's decision on this basis.

### 4.1(b)     The ALJ Reasonably Considered Dr. Mendoza's Opinions

In April 2018, Dr. Mendoza reviewed Plaintiff's file and opined that Plaintiff had no limitation in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting or managing oneself. (R. 686.) Despite indicating Plaintiff had no limitations in understanding, remembering, or applying information, Dr. Mendoza also opined that Plaintiff could "understand and remember for simple and low level detailed tasks." (*Compare* R. 686 *with* R. 672.) He opined Plaintiff could sustain concentration, persistence, and pace for the same type of tasks; could establish and maintain appropriate relationships if he had infrequent interaction with peers and supervisors; and could adapt to routine, but not frequent or intense, workplace stress and changes. (R. 672.)

The ALJ was unpersuaded by Dr. Mendoza's opinions, finding them unsupported by and inconsistent with significant evidence in the record.[5] (R. 16; 20 C.F.R. § 404.1520c(b)(2), (c)(1), (c)(2).) The ALJ was particularly concerned that Dr. Mendoza was not aware of Plaintiff's ongoing work as a companion, a semi-skilled job that involved significant responsibility for the well-being of another individual. (R. 16, 33-35, 50.) The ALJ concluded that Plaintiff's ability to manage the welfare of his clients undermined Dr. Mendoza's opinion that Plaintiff had significant limitations in interacting with others, maintaining concentration and attention, and adapting and managing himself.

---

[5]     The Court also recognizes that Dr. Mendoza's opinion is internally inconsistent, as he opined both that Plaintiff had no limitations and then detailed some limitations.

(R. 16.) This work, though only part time, demonstrated abilities in each of those areas: Plaintiff testified he spent several hours with his clients ensuring that they were fed, ensuring received adequate care from healthcare providers, transporting them to appointments, making sure they did not fall, and accompanying them to the grocery store. (R. 33-35.)

Yet Plaintiff argues the ALJ should not have considered his work as a companion because it was only part time, citing case law recognizing a difference between a claimant's part-time work and an ability to engage in full-time work. (Dkt. 16, pp. 7-8 (citing *Larson v. Astrue*, 615 F.3d 744, 752 (7th Cir. 2010) and *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004).) However, Plaintiff's argument misrepresents the ALJ's assessment. The ALJ did not say Plaintiff's work as a companion proved he could work full time. She said that his work as a companion, which involved social interaction, attention, concentration, and managing another person along with himself, was inconsistent with Dr. Mendoza's opinion as to his limitations in these areas. (R. 16.) The Court finds the ALJ's consideration and comparison here to be reasonable and appropriate considerations. *See*, *e.g.*, *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016); *Laura M. v. Saul*, 2019 WL 3216027, at *3 (N.D. Ill. Jul. 17, 2019); *Dorothy B. v. Berryhill*, 2019 WL 2325998, at *4 (N.D. Ill. May 31, 2019) (claimant's part time work conflicted with physician's opinion that claimant was limited to sedentary work).[6] The Court will not overturn the ALJ's decision on this basis.

The ALJ also found Dr. Mendoza's opinion questionable because Dr. Mendoza's discussion of the evidence demonstrated he was basing his opinion on Plaintiff's subjective complaints, not on any objective observations. (R. 17.) This is a reasonable basis for the ALJ to have discounted Dr. Mendoza's opinions. *See Apke v. Saul*, 817 F. App'x 252, 255 (7th Cir. 2020); *Hinds v. Saul*, 799 F. App'x 396, 399 (7th Cir. 2020) (no error in discounting medical opinion relying heavily on subjective

---

[6]    Similarly, SSR 16-3p indicates an ALJ may consider Plaintiff's "prior work record and efforts to work" in assessing subjective symptoms; an ALJ is even "entitled to consider plaintiff's part-time work after [the] alleged onset date." *Dorothy B.*, 2019 WL2325998, at *4.

complaints not substantiated by objective medical findings). The ALJ did not reinterpret the results of any medical testing to reach a different conclusion than Dr. Mendoza, as Plaintiff implies.[7] (Dkt. 16, p. 9.) Rather, the ALJ noted that Dr. Mendoza did not rely on any testing or even observations, and instead based his opinion on Plaintiff's own assertions. (R. 17.) The ALJ did in fact consider Dr. Mendoza's findings. She then explained why she concluded Dr. Mendoza's opinions were unsupported by and inconsistent with the evidence, and then identified the fact that Dr. Mendoza's opinions were based solely on Plaintiff's complaints as an *additional* factor that weakened the persuasiveness of his opinion. (R. 16-17.) The Court does not find this to be an error, let alone a reversible error.

Plaintiff also faults the ALJ for taking issue with the fact Dr. Mendoza "did not see the entire record [vis-à-vis Plaintiff's job duties as a companion]" but failing to discount the DDS consultants' opinions for the same deficiency. (Dkt. 16, p. 7 (citing R. 16).) Plaintiff's argument, however, ignores that the content of an opinion affects which factors are most relevant to assessing it; not all factors are relevant to all opinions. For example, Dr. Mendoza opined that Plaintiff had difficulty with social interaction. (R. 672, 686.) Plaintiff's ability to work, even part time, doing the intimate work of being a companion reasonably undermined Dr. Mendoza's opinion that Plaintiff could not manage normal social interaction.[8] Thus, this evidence is far less relevant to the content of other state agency opinions,

---

[7]    Similarly, Plaintiff also raised the issue of the ALJ "playing doctor" with respect to Dr. Yang's opinions. (Dkt. 23, p. 4). However, Plaintiff has waived this argument by raising it for the first time in his reply brief. *Brown v. Colvin*, 661 F. App'x 894, 895 (7th Cir. 2016). Nonetheless, the Court finds the ALJ did not impermissibly rely on her lay opinion when discounting Dr. Yang's opinions; as stated above, she reasonably questioned Dr. Yang's assessment that Plaintiff's pain would frequently interfere with his attention and concentration because no attention or concentration deficit had ever been observed. Dr. Yang's internally contradictory opinion was not so well-developed or well-supported that the Court can say the ALJ was wrong in weighing the medical evidence in the way she did.

[8]    The Court is not persuaded by Plaintiff's attempts to downplay the importance of his companion work. (Dkt. 16, pp. 7-8.) Plaintiff, through an agency, is hired by a clients or a client's family to assist with activities of daily living the client cannot do. (R. 33-34.) The Court views Plaintiff's descriptions of his work as a companion (R. 33-38) as requiring a heightened state of situational awareness and interactions with others precisely because his charges are unable to advocate for or help themselves in the ways in which Plaintiff is able.

who did not opine any such limitations. The Court does not find this to be a significant contradictory conclusion and will not remand the ALJ's decision on this basis.

Finally, Plaintiff takes issue with the fact the ALJ found Dr. Mendoza's opinion "not persuasive" because Plaintiff "did not lose his skilled past relevant work for medical reasons but instead because the job was eliminated…." (R. 16.) While Plaintiff is correct that "the fact [Plaintiff] was not fired for medical reasons does not indicate [Plaintiff] was not disabled" (dkt. 16, p. 8; dkt. 23, p. 7), neither is the converse true. The reason Plaintiff remained at or left any given job does not directly correspond to an award or denial of disability benefits by the Commissioner. The implication in the ALJ's statement is that Plaintiff was still able to perform all the functions of his job when the position was eliminated, as opposed to a situation where someone quits a job or is fired because they are unable to perform the essential functions of that job. The Court does, however, find it an odd statement for the ALJ to have made because it does not seem Dr. Mendoza relied on or referenced the circumstances surrounding the end of Plaintiff's prior employment. Nonetheless, the ALJ made the statement, and noted the fact Plaintiff was able to continue working in a job that required interacting, persisting or maintaining pace, and adapting and managing himself until his position was eliminated failed to support Dr. Mendoza's opinions concerning Plaintiff's limitations in these areas during this time period. (R. 16.) The Court can trace the ALJ's path of reasoning, which is sufficient to build an adequate logical bridge. The Court will not overturn the ALJ's decision based on her reference to the fact Plaintiff did not lose his prior job for medical reasons.

In sum, the Court finds the ALJ adequately addressed Dr. Mendoza's opinions; the Court will not overturn the ALJ's decision on this basis.

### 4.2    The ALJ Appropriately Assessed Plaintiff's Subjective Statements

Plaintiff also complains the ALJ failed to properly evaluate Plaintiff's subjective statements about the extent of his limitations. The Court disagrees.

The regulations set forth a two-step process for evaluating a plaintiff's statements about his impairments. *See* 20 C.F.R. § 416.929. An ALJ first determines whether a medically determinable impairment "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 416.929(a). If so, the ALJ then "evaluate[s] the intensity and persistence" of the plaintiff's symptoms and determines how they limit the plaintiff's "capacity for work." 20 C.F.R. § 416.929. In applying the second step, the ALJ assesses whether medical evidence substantiates the plaintiff's symptoms. *See* Social Security Ruling ("SSR") l6-3p. If medical evidence does not confirm the intensity and persistence of the claimed symptoms, the ALJ considers a list of non-exhaustive factors. *See id*. An ALJ's assessment of a plaintiff's subjective statements of symptoms need not be flawless and is entitled to deference unless it is "patently wrong," which is a "high burden." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015); *Turner v. Astrue*, 390 F. App'x 581, 587 (7th Cir. 2010). Only when an ALJ's assessment lacks *any* explanation or support will a court declare it to be 'patently wrong.' *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008).

Here, the ALJ summarized Plaintiff's testimony, including that sitting was more difficult for him than standing, that he needed to stretch and alternate positions, and that he could walk well over half a mile before needing to rest. (R. 19, 39.) Plaintiff reported being able to lift up to ten pounds. *Id*. The ALJ then explained that she found Plaintiff's assertions about the severity of his symptoms and limitations not entirely consistent with the medical evidence. (R. 19; 20 C.F.R. § 404.1529(c)(2).) Her discussion of the evidence highlighted the ways in which Plaintiff's assertions varied from the evidence.

For example, despite his assertion of severe limitation throughout the entire alleged period of disability, medical records spanning from January 2018 through January 2019 reflected no significant problems in functioning. (R. 19 (citing R. 708 (no edema, normal range of motion, strength, coordination, gait, mood, affect, speech, behavior, judgment, thought content, cognition, and

memory); 728 (examination results all normal); 743 (normal physical exam); 757 (same); 786 (same); 801-02 (same); 829-30 (same)).) The ALJ recognized that Plaintiff had serious diagnoses and had received appropriate treatment for them. (R. 19.) She noted that Plaintiff took medication for his myopathic dystrophy, and that the medication helped, though it also caused weight gain as a side effect. (R. 19 (citing R. 575-81).) She also noted that Plaintiff received epidural steroid injections for his neck, back, and leg pain beginning in early 2018. (R. 19 (citing R. 1061-67, 1117, 1152).) The ALJ inferred that those treatments appeared to be effective when she noted that examinations subsequent to January 2018 did not reveal the gait deficit that was present prior to this time. (R. 19.) The ALJ also noted that Plaintiff's healthcare provider encouraged him to remain active. (R. 19 (citing R. 649).) Thus, the ALJ not only analyzed Plaintiff's treatment history, but she highlighted instances where the severity of his self-reported limitations was not entirely consistent with the medical evidence. Thus, this explanation by the ALJ is not 'patently wrong' in the sense that it is not wholly unsupported. *Elder*, 529 F.3d at 413-14.

In addition to noting the instances where the medical records failed to substantiate Plaintiff's allegations, the ALJ also acknowledged times when the medical records did substantiate some of Plaintiff's complaints. (R. 19.) Contemporaneous medical records reflected complaints of problems sitting for long periods and difficulty with handgrip in cold conditions. (R. 19 (citing R. 375-78, 401-06).) Additionally, the ALJ noted that Plaintiff stood for much or the Administrative Hearing, substantiating his complaints about difficulty sitting. (R. 19.) The ALJ's RFC finding accommodated these subjective reports that were substantiated by the evidence.

Plaintiff also asserts the ALJ erred in evaluating his daily activities, because she did not explain *how* she considered them. In her decision, the ALJ summarized Plaintiff's wife's report concerning Plaintiff's daily activities, demonstrating that the ALJ had considered both the wife's report and the daily activities reflected therein. (R.20.) She was not required to do more. Specifically,

the Seventh Circuit, in *Gedatus v. Saul*, recently restated a long-held maxim that "[a]n ALJ need not rehash every detail each time he states conclusions on various subjects." *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021). It appears that the ALJ here engaged in just as much consideration of Plaintiff's daily activities as the ALJ in *Gedatus*.[9] *Id*. Therefore, just as in *Gedatus*, it remains true here that the ALJ did discuss Plaintiff's daily activities and was aware of them when considering other aspects of her claim. *Id*. Plaintiff also faults the ALJ for not "mention[ing] Plaintiff's difficulties performing daily activities" (Dkt. 16, p. 3; Dkt. 23, p. 12), another argument which was specifically rejected by the *Gedatus* Court: "[Gedatus] also argues the ALJ failed to consider that she performed tasks slowly, with breaks and help. But an ALJ need not discuss every detail related to every factor…." *Gedatus*, 994 F.3d at 903. Under prevailing Seventh Circuit case law, the ALJ's analysis of Plaintiff's daily activities was enough, and the Court will not overturn the ALJ's decision on this basis.

Similarly, the Court can find no fault with the ALJ's analysis of Plaintiff's complaints of pain. As discussed, the ALJ acknowledged Plaintiff's diagnoses and treatment. She also highlighted medical evidence (as opposed to subjective statement) that reflected on his functional abilities. She accommodated handling, fingering, and feeling limitations, among others. The ALJ discussed much of the evidence that Plaintiff cites but, again, was not required to address every piece of evidence. *See*, *e.g.*, *Gedatus*, 994 F.3d at 901 (selective summaries of evidence are appropriate). Plaintiff provided one citation for his purported antalgic gait (R. 1063), and two citations for reduced range of

---

[9]    In *Gedatus*, the ALJ "observed that [plaintiff] did chores, shopped, handled finances, drove, read, attended events, ran errands, visited family and friends, watched television, managed a household, cared for herself and her children, and gardened." *Gedatus*, 994 F.3d at 903. Here, the ALJ noted that Plaintiff "engage[s] in variety of activities including household chores such as food prep, dishes, and light repairs, as well as handling funds, driving, providing support for a child, using a computer to shop, going out to shop, going to sports events, playing games with family, going out to the library, using social media, taking care of a dog including walking, going out alone with no evidence of getting lost or confused or having problems interacting with others including strangers, following a schedule to take dog for walk and to feed the dog, and playing games." (R. 20.)

motion (R. 510, 593), and asserts that remand is required because the ALJ did not explain if his allegations were consistent with those three pages in an Administrative Record spanning 1,239 pages. (Dkt. 16, p. 14.) No regulation, policy, or governing precedent requires the ALJ to address Plaintiff's subjective pain allegations in the way Plaintiff suggests. Just the opposite is true. *Pepper v. Colvin*, 712 F.3d 351, 363 (7th Cir. 2013) ("an ALJ is not required to discuss every snippet of information from the medical records that might be inconsistent with the rest of the objective medical evidence" (citing *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009)). The Court will not remand on this basis.

Next, Plaintiff faults the ALJ for failing to engage in a deeper discussion of the Plaintiff's treatment history, specifically the epidural steroid injections Plaintiff received. (Dkt. 16, pp. 14-15.) As mentioned above, the ALJ noted that Plaintiff received epidural steroid injections for his neck, back, and leg pain beginning in early 2018. (R. 19 (citing R. 1061-67, 1117, 1152).) The ALJ then noted that examinations subsequent to the injections did not reveal the gait deficit that was present prior to this time, the inference being that the injections were successful in providing some relief. (R. 19.) While the ALJ did not specifically characterize this treatment as conservative, there are a host of decisions in this circuit finding injections to be on the conservative end of the treatment spectrum.[10] Thus, there is even less weight to Plaintiff's argument that "the ALJ failed to explain whether undergoing this treatment lent credence to Plaintiff's alleged symptoms." (Dkt. 16, p. 14.) The ALJ appropriately acknowledged the injections and the improvement they caused. The Court

---

[10]   Plaintiff has been unsuccessful in his attempt to portray his treatment as less conservative than it was (*see* dkt. 16, pp. 14-15; dkt. 23, pp. 13-14) due to a wealth of cases holding the opposite. *See, e.g.*, *Prill v. Kijakazi*, 23 F.4th 738, 749 (7th Cir. 2022); *Olsen v. Colvin*, 551 F. Appx. 868, 875 (7th Cir. 2014); *Simila*, 573 F.3d at 519; *Burnam v. Colvin*, 525 F. App'x 461, 465 (7th Cir. 2013); *Chestine G. v. Saul*, 2020 WL 1157384, at *4 (N.D. Ill. Mar. 10, 2020); *Trista C. v. Kijakazi*, 2021 WL 4775294, at *4 (N.D. Ill. Oct. 13, 2021); *Richard J. N. v. Kijakazi*, 2021 WL 6063912, at *11 (N.D. Ill. Dec. 22, 2021); *Frazier v. Berryhill*, 2019 WL 157911 (N.D. Ill. Jan. 10, 2019); *King v. Berryhill*, 2018 WL 6179092, at *7 (N.D. Ill. Nov. 27, 2018); *McCammond v. Colvin*, 2016 WL 3595736, at *4 (N.D. Ill. July 5, 2016); *Kolar v. Colvin*, 2016 WL 397288, at *8 (N.D. Ill. Feb. 2, 2016); *Sherry v. Colvin*, 2016 WL 305358, at *8 (N.D. Ill. Jan. 26, 2016); *Wheatley v. Colvin*, 2016 WL 183915, at *13 (N.D. Ill. Jan. 13, 2016); *Curtis v. Colvin*, 2014 WL 1917094, at *6 (N.D. Ill. May 13, 2014).

finds nothing lacking about the way the ALJ discussed this conservative treatment. Moreover, under SSR 16-3p, this is what is precisely required. SSR 16-3p (ALJ will discuss "treatment, other than medication" and the "effectiveness" of the same). The Court will not remand based on the ALJ's discussion of Plaintiff's treatment history.

Finally, Plaintiff faults the ALJ for allegedly failing to account for his good work history/long work history. (Dkt. 16, p. 15.) The ALJ, who found Plaintiff could perform his past relevant work, was plainly aware of Plaintiff's work history (and even explicitly refers to it at R. 16-17). The ALJ was not, however, required to accept Plaintiff's work history as proof Plaintiff's symptoms were as severe as alleged, or even to discuss it in her decision. The Seventh Circuit has been clear on this point. *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) ("work history is just one factor among many and it is not dispositive" and an ALJ's silence on work history "is not enough to negate the substantial evidence supporting the adverse credibility finding"); *Jones v. Apfel*, 234 F.3d 1273 (7th Cir. 2000) (claimant "not entitled to a presumption of credibility based solely on his long work history"); *see also*, *Cabrera v. Astrue*, 2011 WL 1526734, at *10 (N.D. Ill. Apr. 20, 2011) (sustaining ALJ's decision where, like here, the "ALJ acknowledged that Plaintiff's good work history bolstered her credibility, but also stressed that she stopped working because her position was eliminated and not due to her impairments"). Whether Plaintiff's work history outweighed other considerations when assessing the reliability of his assertions is a question for the ALJ. It is impermissible for the Court to substitute its judgment for that of the ALJ on this topic. *Gedatus*, 994 F.3d at 900.

In sum, the Court finds the ALJ reviewed, acknowledged, and assessed Plaintiff's alleged symptoms and limitations, and then used the factors in the regulations and agency policy to satisfactorily explain why they were not fully consistent with the objective and other relevant evidence in the record. 20 C.F.R. § 416.929(c)(3)(ii). The ALJ's assessment of Plaintiff's symptoms and accompanying reasoning is well-supported and adequate to support her conclusions (*i.e.*,

supported by substantial evidence). *Barnett*, 381 F.3d at 668. The Court is sufficiently able to assess how the ALJ evaluated Plaintiff's symptoms, as required by SSR 16-3p Accordingly, for the multiple reasons set forth above, the Court finds the ALJ reasonably evaluated Plaintiff's subjective symptoms; the Court thusly declines to remand on this basis.

### 4.3 The ALJ Properly Evaluated Plaintiff's RFC Under SSR 96-8P

In his final argument, Plaintiff alleges the ALJ failed to properly evaluate Plaintiff's residual functional capacity. Again, the Court disagrees.

"[T]he determination of a claimant's RFC is a matter for the ALJ alone – not a treating or examining doctor – to decide." *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014). The ALJ will assess a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c). Specifically, under SSR 96-8p, an ALJ's assessment must "[c]ontain a thorough discussion and analysis of the objective medical and other evidence...and set forth a logical explanation of the effects of the symptoms…on the individual's ability to work."

In her decision, the ALJ restricted Plaintiff to a reduced range of light work, limiting him to no more than occasionally lifting ten pounds, occasionally climbing ramps and stairs and occasional postural movements, and no more than frequent use of his hands to handle, finger, and feel. (R. 18.) As discussed above, the ALJ cited substantial evidence in support of her residual functional capacity finding, including evidence that reflected normal physical examinations. (R. 19 (citing R. 708, 728, 743, 757, 786, 801-02, 829-30).) The ALJ was also persuaded by opinions from state agency physicians, though she adopted additional restrictions to address evidence that came into the record after the state agency physicians offered their assessments. (R. 19, 74-75, 90-92.) Further, the ALJ identified the source of each restriction she included and cited evidence to support the restriction. (R. 19-20.)

Plaintiff's primary criticism of the RFC finding is that there is an impermissible "evidentiary

deficit" if the ALJ does not either fully adopt one of the medical opinions or accept plaintiff's allegations as true. (Dkt. 16, p. 10.) This is wrong. An ALJ is not "required to rely entirely on a particular physician's opinion or choose between the opinions." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007); *see also*, *Suide v. Astrue*, 371 F. App'x 684 (7th Cir. 2010) (rejection of claimant's doctor's opinion did not require remand; remand on another basis). As the Seventh Circuit recently explained in *Vang v. Saul*, the requirement that an ALJ "consider all limitations supported by [the] record evidence" and "tie the record evidence to the limitations included in the RFC finding" does not require that the ALJ match specific RFC findings to a medical opinion. 805 F. App'x 398, 401-02 (7th Cir. 2020) (citing *Jozefyk v. Berryhill*, 923 F.3d 492, 497-98 (7th Cir. 2019)). "[T]he critical question is not whether the ALJ's RFC conclusions match a medical expert's opinion item-by-item but whether substantial evidence supports what the ALJ ultimately concluded about the claimant's RFC." *Michael B. v. Berryhill*, 2019 WL 2269962, at *6 (N.D. Ill. May 28, 2019). Here, the Court does not find the ALJ created her own "middle ground" lay opinion, as Plaintiff alleges; the ALJ adequately tied evidence of record to her assessed RFC limitations. The Court will not remand on this basis.

Next, Plaintiff argues that the state agency opinions did not support the RFC finding because the ALJ included additional restrictions beyond what those physicians opined. When Plaintiff's counsel made this argument before Magistrate Judge Cole in another Northern District of Illinois case, the court called it "a prime example" of nitpicking that did not help his claim:

> [P]laintiff criticizes the ALJ for adding some additional limitations to plaintiff's physical RFC than were found in the assessments of the state agency reviewing physicians. So, the ALJ looked at the medical evidence, and compared the state agency physicians' opinions with it and felt the plaintiff should be somewhat more limited than those doctors thought…As a result, the ALJ added some restrictions involving climbing stairs and ramps and completely ruled out climbing ladders and scaffolds. That the plaintiff faults the ALJ here is a head scratcher – an argument that former Magistrate Judge – now District Court Judge – Iain Johnston aptly called "quizzical." *Karla J.B. v. Saul*, 2020 WL 3050220, at *4 (N.D. Ill. 2020). If the ALJ

was wrong and the plaintiff can climb stairs all day, it doesn't move the needle in the direction of a remand. Is the plaintiff asking for a remand so the next ALJ can find him able to climb ladders?

*Patrick C. v. Saul*, 2020 WL 6287370, *8 (N.D. Ill. Oct. 27, 2020) (record citation omitted). Plaintiff is presumably not arguing the ALJ should have adopted the state agency physicians' opinions that he could perform *greater* work-related activities. But his assertion that these medical opinions do not support the ALJ's conclusion Plaintiff could do *at least as much* as the RFC is baseless.

The Commissioner classifies the remainder of Plaintiff's arguments as "similar nitpicks." The Court does not disagree. Plaintiff complains that although he testified he could lift up to ten pounds, he did not state how often he could do so. But Plaintiff was represented at the Administrative Hearing. If he could lift up to ten pounds only sporadically (not even occasionally) it stands to reason his counsel would have brought this fact to light. *See*, *e.g.*, *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007) ("[A] claimant represented by counsel is presumed to have made his best case before the ALJ…."). The Court finds the ALJ made a reasonable inference here as to the frequency Plaintiff could lift ten pounds; the Court does not find the ALJ made an independent medical determination, or put forth an improper presumption, speculation, or supposition. *See* SSR 86-8 ("Reasonable inferences may be drawn, but presumptions, speculations and suppositions should not be substituted for evidence").

Plaintiff again misses the mark concerning his reports of fatigue and need to lie down (Dkt. 16, p. 12; Dkt. 23, p. 10.) As Plaintiff notes, the ALJ expressly acknowledged his complaints of fatigue. (Dkt. 16, p. 12 (citing R. 19).) Nonetheless, Plaintiff argues the ALJ was required to provide greater discussion of his purportedly disabling fatigue. In support, Plaintiff cites to a handful of pages in the Administrative Record, only three of which are medical evidence (versus Plaintiff's subjective statements). (*See* R. 400, 444, 696). One of the cited records dates from before Plaintiff's alleged onset date, when he was still working – doing the work that the ALJ found him capable of performing

at Step 4 of the sequential evaluation. (R. 444) (record from 5/25/2016); *see also*, R. 164 (Plaintiff laid off 12/31/2016).) This suggests Plaintiff's fatigue was, in fact, not disabling. The second of these records chronicles that Plaintiff denied dozing off unintentionally to his physician (R. 444), despite Plaintiff's contrary testimony at the Administrative Hearing (R. 55). Finally, the third of these records is a summary of other evidence that is part of a state agency medical opinion that is consistent with the residual functional capacity finding, though the physician opined Plaintiff could lift more than ten pounds. (R. 696.) None of this medical evidence that reflected on Plaintiff's complaints of fatigue or needing to lie down demands a different result.

The Court finds that substantial evidence supports the ALJ's residual functional capacity finding. The Court will not overturn the ALJ's decision on this basis.

**5.     CONCLUSION**

For the reasons detailed above, the Court finds the ALJ's decision to be supported by substantial evidence and contain the requisite adequate logical bridges between the evidence and her conclusion. The Court declines to remand this matter. Therefore, Plaintiff's motion for summary judgment (dkt. 16) is DENIED and Defendant's motion for summary judgment (dkt. 21) is GRANTED. The final decision of the Commissioner denying benefits is affirmed.


**ENTERED: March 1, 2022**

Susan E. Cox,
United States Magistrate Judge